FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JAN 27 2006

DEBRA MAKAR,              :

    Plaintiff,            :

    vs.                   :     **CIVIL ACTION NO. 3:04-2538**

                          :

JO ANNE B. BARNHART,      :     (JUDGE NEALON)

Commissioner of Social Security,  :     (MAGISTRATE JUDGE BLEWITT)

                          :

    Defendant             :

## MEMORANDUM and ORDER

This is a Social Security matter which comes before the Court on the

Plaintiff's appeal from the denial of her claim for supplemental security income

benefits pursuant to Title XVI of the Social Security Act, 42 U.S.C. § 1381-1383f by

the Defendant, Commissioner of Social Security.[1]  The matter was referred to United

States Magistrate Judge Thomas M. Blewitt for initial consideration.  On December 8,

2005, the Magistrate Judge filed a Report and Recommendation in which he

recommended that the Plaintiff's appeal be denied. (Doc. 9).  The Plaintiff filed

Objections to the Report and Recommendation on December 22, 2005, and the

Government filed a Response on January 9, 2006 (Docs. 11, 13, 14, 15), to which

---

[1]  The action was brought pursuant to 42 U.S.C. § 405(g) and 1383(c)(3).

Plaintiff filed a Reply on January 20, 2006. (Doc. 16). The matter is ripe for

disposition and, for the reasons that follow, the Report and Recommendation will be

adopted and the appeal will be denied.

## I. Standard of Review

Pursuant to the Federal Magistrates Act, when objections to a report and

recommendation have been filed, "[a] judge of the court shall make a de novo

determination of those portions of the report or specified proposed findings or

recommendations to which objection is made. A judge of the court may accept,

reject, or modify, in whole or in part, the findings or recommendations made by the

magistrate. The judge may also receive further evidence or recommit the matter to

the magistrate with instructions." 28 U.S.C. § 636(b)(1)©. This matter will be

reviewed de novo as to those portions of the Report and Recommendation to which

objections were filed.

## II. Procedural Background

The Plaintiff, Debra Makar, filed an application for Supplemental Security

Income/Disability Insurance Benefits ("SSI", "DIB") on December 2, 2002 alleging

an inability to work since November 15, 2002, due to, *inter alia*, affective disorder,

an anxiety-related disorder, migraine headaches, diabetes, arthritis and low back pain.

®. 15). Her request for benefits was denied at the initial level and she filed a request

2

for a hearing before an Administrative Law Judge ("ALJ").  A hearing was held on February 9, 2004, which resulted in a decision, unfavorable to the Plaintiff, being issued on March 25, 2004. (R. 22).  The Plaintiff then requested review by the Appeals Council which, by Notice of Action dated September 24, 2004, declined review of that decision, making the decision of the ALJ the final decision of the Commissioner of Social Security. (R. 6-8).  This appeal followed on November 23, 2004. (Doc. 1).

On March 11, 2005, the Plaintiff filed a brief in support of her appeal wherein she argued that the ALJ erroneously concluded she was not disabled where the only expert opinion in the records found that she is disabled, and that the ALJ failed to conduct a proper credibility analysis.  She also contended that the ALJ erred in evaluating her anxiety condition under the § 12.04 listings, asserting that not only does the record support a finding that the Plaintiff meets the requirements of subsections A, B and C, but also that the ALJ failed to address whether her anxiety condition meets or exceeds a listed impairment.  The Government filed an opposing brief on April 11, 2005. (Doc. 6).  The Magistrate Judge issued a Report and Recommendation on December 8, 2005, recommending that the appeal be denied. (Doc. 9).  Timely objections, and a response thereto, followed. (Docs. 11, 13-15).

3

## III. Disability Determination Process

The Social Security Regulations establish a five-step evaluation process which is used to determine if a person is entitled to disability benefits. *See* 20 C.F.R. § 404.1520. If at any step in the process the Commissioner finds that a Plaintiff is disabled or not disabled, review does not proceed any further. 20 C.F.R. §§ 404.1520, 416.920. The steps in the process are as follows: 1) Is the individual engaging in substantial gainful activity? 2) Does the individual have a severe impairment? 3) Does the individual have an impairment which meets or equals the listing of impairments as set forth in 20 C.F.R. part 404, subpart P, *appendix* 1? 4) Does the individual retain the residual functional capacity to engage in his/her past relevant work? and 5) If an individual does not have the capacity to engage in his/her past work, does s/he retain the capacity to perform jobs which exist in significant numbers in the national economy? *See* Social Security Ruling 86-8; 20 C.F.R. §404.1520.

The disability determination involves shifting burdens of proof. The initial burden rests with the claimant to demonstrate that he or she is unable to engage in his or her past relevant work. If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. *Mason v.*

4

*Shalala,* 993 F.2d 1058, 1064 (3d Cir.1993).

In the present case, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since her alleged onset date, and that her anxiety and affective disorder were severe impairments but her other alleged impairments, including asthma, hypertension, degenerative disc disease, migraine headaches, diabetes, irritable bowel syndrome, sleep apnea and varicose veins were not severe, either singly or in combination, within the meaning of the Regulations. (R. 16). He also found that while she has impairments that place significant restrictions of the ability to perform basic work-related activities, she does not have an impairment, or combination of impairments, that meet, or medically equal, the criteria for establishing a disability. (R. 21). He further determined that Plaintiff had no transferrable skills from her past relevant work appropriate for her functional capacity, but that she retains the residual functional capacity ("RFC") to perform her past relevant work and other similarly-situated simple work at any exertional level which exist in significant numbers in the national economy. (*Id.*). Consequently, the ALJ concluded that she was not disabled. (*Id.*)

## IV. Discussion

The role of this court in reviewing a decision by the Commissioner of Social Security to deny disability benefits is to "determine whether there is substantial

evidence to support the Commissioner's decision." *Jones v. Barnhart*, 364 F.3d 501,

503 (3d Cir. 2004)(*citing Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir.1999)).

"Substantial evidence means such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion.... It is less than a preponderance of the

evidence but more than a mere scintilla." *Id.* (internal quotations and citations

omitted). In an adequately developed factual record, substantial evidence may be

"something less than the weight of the evidence, and the possibility of drawing two

inconsistent conclusions from the evidence does not prevent an administrative

agency's finding from being supported by substantial evidence." *Consolo v. Federal

Maritime Commission*, 383 U.S. 607, 620 (1966)(cited in *Richardson v. Perales*,

*supra*). "Substantial evidence had been . . . defined as 'enough [evidence] to justify,

if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to

be drawn from it is one of fact for the jury.' *NLRB v. Columbian Enameling &

stamping Co.*, 306 U.S. 292, 300 (1939)," *Olsen v. Schweiker*, 703 F.2d 751, 753 (3rd

Cir. 1983). Overall, the substantial evidence standard is a deferential standard of

review." *Jones v. Barnhart, supra,* 364 F.3d at 503.

In the Report and Recommendation, the Magistrate Judge found that there was

substantial evidence in the record to support the decision of the ALJ. Finding that the

ALJ properly evaluated Plaintiff's impairments and concluded that her impairments

did not meet, or medically exceed the §12.04 listings, the Magistrate Judge determined that the medical evidence supported the ALJ's conclusion that Plaintiff impairments did not render her disabled.  Moreover, although Plaintiff maintained that the ALJ improperly weighed the opinion of Dr. David Longo, a consulting psychologist, the Report and Recommendation found that the ALJ was justified in giving less weight to his opinion that Plaintiff was "disabled," both a medical and vocational conclusion, because such a determination is reserved to the discretion of the ALJ.

The Plaintiff presents the following grounds as objections to the Report and Recommendation:

1.   The Report and Recommendation erred in relying on isolated facts in support of the ALJ's decision rather than the Plaintiff's entire medical record and history.

2.   The Magistrate Judge disregarded Plaintiff's significant absences from work due to depression.

3.   The Magistrate Judge improperly weighed the opinions of Drs. Kowalski and Longo.

4.   The ALJ failed to set forth specific reasons why he found the Plaintiff was not credible.

5.   The Report and Recommendation erred in determining that the ALJ correctly analyzed Plaintiff's impairments under the 12.04 Listings and found she did not meet the requirements of subsections A, B and C.

(Doc. 13). Each of these will be addressed *in seriatim*.

## I. Medical History

Plaintiff first asserts that the Magistrate Judge erred in upholding the findings of the ALJ, alleges that the ALJ disregarded portions of her medical history which documented her depression. Plaintiff asserts that the ALJ selected isolated facts in the record to support the conclusion that Plaintiff is not disabled and that he failed to give proper consideration to the medical records from 1982-1991 by assuming she had been cured of her depression. While the court agrees with Plaintiff when she maintains that her successful treatment "does not mean her depression went away," (Doc. 16), the proper inquiry is not whether she has an impairment, but whether it can be considered disabling under the Act.

Because she received treatment for her psychological problems between 1982 and 1984, and thereafter from 1990-1991, and did not again seek treatment until 2001, Plaintiff maintains that the ALJ placed little weight in her earlier records finding that these were brief bouts from which she recovered and performed well after treatment. Defendant argues, however, that the ALJ properly focused most attention on her medical records from 2002 to the present, inasmuch as this period reflects Plaintiff's alleged onset date of disability. The ALJ found that her most

recent records from 2001through 2003 culminated in two in-patient hospitalizations, one lasting four (4) days in 2001 and one lasting six (6) days in 2003. Moreover, as with her previous psychological episodes for which she sought treatment between 1982-1984 and 1990-1991, Plaintiff was noted to be responding well and her condition improving after treatment. Consequently, the ALJ did consider these earlier records as being consistent with Plaintiff's present condition, which is a history of psychological impairment that responds well to treatment. However, the ALJ properly did not view such records as establishing a lifetime of disability, as Plaintiff would have him find, given that her periods of non-treatment, during which she was, presumably, unhindered by this condition, are greater than those of any period of treatment. Her prior history of affective disorder reveals periods of impairment lasting three months (1982), twelve months (1983-1984) and six months (1991), thus lending support to the fact that she her early history of an affective condition was not permanent but intermittent. Accordingly, her psychological impairments cannot be considered life-long or "chronic" dating back to 1982; indeed, she does alleged a disability dating back so far inasmuch as her claimed onset date is November, 2002. Rather, the condition is more appropriately characterized as "episodic" between 1982-1984 and again from 1990-1991, with extended periods of significant, if not full, recovery during which she was able to maintain gainful

employment.  Accordingly, there is substantial evidence to support the ALJ's determination on this issue.

## II. Work Absences

Plaintiff also maintains that the ALJ disregarded several absences from work due to her depression, and that he erred in finding that she could point to no specific work absences due to her depression.  In doing so, she avers that the ALJ unfairly focused on absences not related to her depression.  Defendants contends, however, that absences alone are insufficient to establish a disability.

The Plaintiff submitted records reflecting the dates she was absent from work and, in some of these instances, physicians' notes explaining her absences.  The ALJ found that several of the slips from her physician, which she submitted in support of her absences, cited reasons other than her depression.  Plaintiff argues that several instances of work absences in 2001 and 2002 evidence her depression when coupled with her requests to her employer identifying her need for extended leave due to depression. However, while she testified as to which absences were attributed to psychological incidents, the record was devoid of objective evidence correlating several of her absences with depression.  In upholding this finding, the Report and Recommendation determined that it was reasonable for the ALJ to conclude that these records demonstrate not "specific work problems but only [] extensive absences from

10

work, which [Plaintiff] personally credits to her depression." (Doc. 9, p.11).

Accordingly, because the objective evidence does not support a finding that several of

the absences were due to her psychological impairments, the ALJ and the Magistrate

Judge properly addressed Plaintiff's absences from work.

### III.  Medical Opinions of Drs. Longo and Kowalski

Noting that a consulting physician, Dr. Longo, found Plaintiff to be disabled,

both the ALJ and the Magistrate Judge remarked that, not only is such a

determination reserved exclusively to the ALJ, but also that Plaintiff's medical

history belies a more positive picture of Plaintiff's health, noting her condition, on

several occasions, responded well to treatment.  The conclusion that her affective

disorder was "totally and permanently disabl[ing]" was noted by the ALJ to be

sweeping and unsubstantiated in the record.  (R. 572).  He remarked that Plaintiff had

improved with treatment and had long periods of successful functioning.  Moreover,

the opinion of Dr. Longo, a consulting psychologist who examined Plaintiff only

once, is entitled to less weight than that of a treating physician.  While Dr. Kowalski

was also a consulting physician, his opinion that Plaintiff has depression and panic

attacks that, with treatment, result in only mild restrictions in her functioning, is a

conclusion corroborated by the medical evidence of record.  Consequently, the

determination of the ALJ regarding the weight afforded to the medical opinions of

11

Drs. Longo and Kowalski is supported by substantial evidence.

### IV. Credibility Analysis

"'[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility.' *Walters v. Commissioner of Social Sec.*, 127 F.3d 525, 531 (6th Cir.1997); *see also Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir.1991) ('We defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility.')." *Frazier v. Apfel*, 2000 WL 288246 (E.D.Pa. March 7, 2000).

The Social Security Regulations provide a framework under which a claimant's subjective complaints are to be considered. 20 C.F.R. §404.1529. First, symptoms, such as pain, shortness of breath, fatigue, *et cetera,* will only be considered to affect a claimant's ability to perform work activities if such symptoms result from an underlying physical or mental impairment that has been demonstrated to exist by medical signs or laboratory findings. 20 C.F.R. §404.1529(b). Once a medically determinable impairment which results in such symptoms is found to exist, the Commissioner must evaluate the intensity and persistence of such symptoms to determine their impact on the claimant's ability to work. 20 C.F.R. §404.1529(b). In so doing, the medical evidence of record is considered along with the claimant's

12

statements. 20 C.F.R. §404.1529(b).  Social Security Ruling 96-7p gives the

following instructions in evaluating  the credibility of the claimant's statements

regarding his or her symptoms: "In general, the extent to which an individual's

statements about symptoms can be relied upon as probative evidence in determining

whether the individual is disabled depends on the credibility of the statements.  In

basic terms, the credibility of an individual's statements about pain or other symptoms

and their functional effects is the degree to which the statements can be believed and

accepted as true. When evaluating the credibility of an individual's statements, the

adjudicator must consider the entire case record and give specific reasons for the

weight given to the individual's statements." SSR 96-7p.

Plaintiff asserts that her symptoms are well-supported by the medical evidence

and that the ALJ rejected her testimony, finding she overstated her symptoms,

without sufficient explanation.  Defendant observes that Plaintiffs subjective

complaints alone are insufficient to establish a disability and, further, that it is the

ALJ's position to weigh the subjective complaints against the medical evidence of

record.  In comparing Plaintiff's subjective claims with the objective medical

evidence, the ALJ neither rejected her testimony nor the existence of impairments, but

found the severity of them to be exaggerated.  In applying this standard, the ALJ

rejected the degree to which the subjective complaints were not supported by the

record as a whole.  The ALJ did not reject her subjective complaints outright, as he credited her statements about her poor concentration, fatigue, panic attacks and limited ability to perform housework in concluding that her mental impairments limited the degree to which she could perform detailed or complex tasks.  (R. 20). While determining Plaintiff suffers from the impairments claimed, he found that the limitations resulting therefrom were overstated.  The ALJ noted that Plaintiff's complaints were "inconsistent with the clinical and diagnostic findings found of record particularly as they relate to her exertional capacity."  *Id.*  Given this framework, the court concludes that the credibility analysis, evaluating the extent to which her subjective complaints were reasonably consistent with the objective medical evidence, was proper.  Consequently, this assessment is supported by substantial evidence and will not be disturbed on appeal.

### V. Whether Plaintiff Has a Listed Impairment

A finding of an existent medical condition alone does not demonstrate a disability.  *See Petition of Sullivan,* 904 F.2d 826, 845 (3d Cir. 1990).  The Listing of Impairments describe impairments "severe enough to prevent a person from doing any gainful activity" without respect to one's age, education or employment experience.  20 C.F.R. § 404.1525(a).  If a person has an impairment or combination of impairments severe enough to meet or medically equates to the specified listed

impairment, he is presumed disabled. (R. 17). In <u>Williams v.Sullivan</u>, 970 F.2d 1178 (3rd Cir. 1992), the Court of Appeals for the Third Circuit stated that: "[i]n order to qualify for benefits at step three of the sequential evaluation process, a claimant must match or equal a listed impairment. For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." <u>Id</u>. at 1186(emphases in the original, internal citations and quotations omitted). Thus, the question is not only whether the plaintiff has a medical condition, but also whether the condition causes a functional disability that prevents the plaintiff from participating in gainful activities. *Guthrie v. Barnhart.* (M.D. Pa. No. 02-2114)(Kosik, J.).

Plaintiff argues that the ALJ failed to give any consideration to whether she has a listed impairment or equivalent thereof, and that he erred in concluding she could not meet subsections A and B or C of the listings related to affective disorders. It is Defendant's position that for Plaintiff to establish a disability under §12.04, she was required to meet subsection A *and* subsection B, or meet subsection C, in order to have an impairment equal to or exceeding the listing. Further, inasmuch as the ALJ found that she did not meet the requirements of subsection A, nor can she meet the criteria set forth in subsection B, Defendant contends that Plaintiff's affective

disorder does not meet nor medically exceed the listed impairments of § 12.04.

A review of the medical evidence shows that the ALJ determined that Plaintiff's affective disorder, while severe, was not "characterized by a disturbance of mood, accompanied by a full or partial medical depressive syndrome." (R. 20). Further, Defendant contends that Plaintiff cannot meet any two (2) of the four (4) criteria listed in Subsection B, *to wit*,

1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, Subpt. P., App. 1, § 12.04. The ALJ concluded that the Plaintiff's mental impairments "impose a mild degree of functional limitation with regard to the performance of activities of daily living and moderately limit [her] ability to undertake or maintain social functioning, concentration, persistence or pace, but have not resulted in episodes of the compensation [sic] of an extended duration." In arguing that she meets the requirements of subsection B, Plaintiff does not contend that the ALJ failed to find such difficulties but that he mischaracterized them as "mild" opposed to "marked." However, she does so by pointing not to medical evidence in the record, but her subjective assertions therein. While there were activities of daily living impaired by her affective condition, there were many such

16

activities she was still capable of performing.  Consequently, the ALJ's assessment of

the "mild" restriction of daily living was appropriate.  Accordingly, Plaintiff failed to

satisfy subsection B.  Regardless of her ability to establish that her condition meets

the elements of subsection A, because she could not meet those of subsection B,

which are conjunctive with those of subsection A, the ALJ properly turned his focus

to subsection C, which requires one of the following:

> C. Medically documented history of a chronic affective disorder of at least 2
> years' duration that has caused more than a minimal limitation of ability to do
> basic work activities, with symptoms or signs currently attenuated by
> medication or psychosocial support, and one of the following:
>> 1. Repeated episodes of decompensation, each of extended
>> duration; or
>> 2. A residual disease process that has resulted in such marginal
>>    adjustment that even a minimal increase in mental demands or
>>    change in the environment would be predicted to cause the
>> individual to decompensate; or
>> 3. Current history of 1 or more years' inability to function outside
>>    a highly supportive living arrangement, with an indication of
>>    continued need for such an arrangement.

20 C.F.R. Pt. 404, Subpt. P., App. 1, § 12.04.  The ALJ found that Plaintiff could not

meet the criteria of subsection C.  Plaintiff disputes this finding but does so generally

without specifying which of the three (3) listed criteria she meets.  As noted by the

Defendant, the term "repeated episodes of decompensation, each of extended

17

duration" refers to three episodes in one year, each lasting for at least two weeks." 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 12.00C(4). There is nothing in the medical record to support such a conclusion. She also does not aver that her affective disorder constitutes a residual disease process resulting in such marginal adjustment that minimal change would predicate decompensation. Nor can Plaintiff reasonably argue that the criteria for 12.04 C(3) have been met inasmuch as there is no evidence of an inability for one year or more to function outside a highly supportive living arrangement. Consequently, the ALJ correctly determined that Plaintiff's affective condition did not meet or medically equal the listed impairments. These findings are supported by the medical evidence of record and the conclusions drawn therefrom which have been cited above.

## V. Conclusion

Finding no error in Magistrate Judge Blewitt's Report and Recommendation, the same will be adopted by the court. Based on the foregoing, the appeal will be denied. An appropriate Order follows.


Date: January 27, 2006                    s/ William J. Nealon
                                          United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DEBRA MAKAR,                          :
      Plaintiff,                   :
                    :      **CIVIL ACTION NO. 3:04-2358**
      vs.                          :
                    :      (JUDGE NEALON)
JO ANNE B. BARNHART,                  :      (MAGISTRATE JUDGE BLEWITT)
Commissioner of Social Security,      :
      Defendant.                   :

## ORDER

      **AND NOW**, this 27th day of JANUARY 2006, consistent with the accompanying Memorandum of this date, **IT IS HEREBY ORDERED THAT**:

    (1)  The Magistrate Judge's Report and Recommendation (Doc. 9) is **ADOPTED**.

    (2)  The Plaintiff's appeal is **DENIED**.

    (3)  The Clerk of Court is directed to close this case.

                         s/ William J. Nealon
                         United States District Judge